UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SHANNON MARIE PETTUS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:16-cv-00181-NCC |
| | ) |
| NANCY A. BERRYHILL,[1] | ) |
| Acting Commissioner of Social Security | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Shannon Marie Pettus ("Plaintiff") for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* Plaintiff has filed a brief in support of the Complaint (Doc. 11), Defendant has filed a brief in support of the Answer (Doc. 16), and Plaintiff filed a reply brief (Doc. 17). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 11).

## I. PROCEDURAL HISTORY

Plaintiff filed her application for SSI on April 12, 2012 (Tr. 126-31). Plaintiff was initially denied on August 29, 2012, and she filed a Request for Hearing before an Administrative Law Judge ("ALJ") on October 15, 2012 (Tr. 75-79, 83-85). After a hearing, by decision dated April 17, 2014, the ALJ found Plaintiff not disabled (Tr. 22-35). On July 24,

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

2015, the Appeals Council denied Plaintiff's request for review (Tr. 11-13). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff has not engaged in substantial gainful activity since April 12, 2012, the filing date of the application for SSI (Tr. 24). The ALJ found Plaintiff has the severe impairments of pseudotumor cerebri,[2] papilledema,[3] headaches, and a learning disability, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 25-28).

After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 416.967(c) with the following limitations (Tr. 28). She is limited to unskilled work, and she should avoid ropes, ladders, and scaffolds (*Id.*). She should also avoid hazardous heights (*Id.*). She should not work in an environment with more than infrequent handling of customer complaints, and she should not work in a setting that requires constant regular contact with the general public (*Id.*). The ALJ found Plaintiff had no past relevant work, noting that her work as a dishwasher for 23 days in March 2012 did not qualify as substantial gainful activity or as past relevant work (Tr. 33). The ALJ found that there are jobs that exist in significant numbers in the national economy that

---

[2] The National Institute of Health defines pseudotumor cerebri as "high pressure within the skull caused by the buildup or poor absorption of cerebrospinal fluid. *Pseudotumor Cerebri Information Page*, Nat'l Inst. of Neurological Disorders & Stroke, https://www.ninds.nih.gov/Disorders/All-Disorders/Pseudotumor-Cerebri-Information-Page (last visited June 28, 2017).

[3] The National Cancer Institute defines papilledema as "swelling around the optic disk, the area where the optic nerve enters the eyeball." *Papilledema Definition*, Nat'l Cancer Inst., https://www.cancer.gov/publications/dictionaries/cancer-terms?cdrid=46241 (last visited June 28, 2017).

Plaintiff can perform, including industrial cleaner, garment sorter, and photo copy machine operator (Tr. 34). Thus, the ALJ concluded that a finding of "not disabled" was appropriate (Tr. 34-35). Plaintiff appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000); *see also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Cox*, 495 F.3d at 617. Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

## IV. DISCUSSION

In her appeal of the Commissioner's decision, Plaintiff raises three issues. First, Plaintiff alleges the ALJ failed to properly evaluate Plaintiff's credibility (Doc. 11 at 511). Second,

Plaintiff alleges the ALJ failed to properly weigh the medical opinion evidence in reaching her RFC determination (*Id.* at 505). Third, Plaintiff alleges the ALJ relied on flawed vocational expert ("VE") testimony (*Id.* at 513). For the following reasons, the Court finds that Plaintiff's arguments are without merit, and that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law.

### A. Credibility

The Court will first consider the ALJ's credibility determination, as the ALJ's evaluation of Plaintiff's credibility was essential to the ALJ's determination of other issues, including Plaintiff's RFC. *Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010) (citing *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005)); 20 C.F.R. §§ 404.1545, 416.945 (2010). "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Holmstrom v. Massanari*, 270 F.3d 715, 721 (8th Cir. 2001). In assessing a claimant's credibility, the ALJ must consider: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

To the extent that the ALJ did not specifically cite *Polaski*, other case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence. *Randolph v. Barnhart*, 386 F.3d 835, 842 (8th Cir. 2004); *Reynolds v. Chater*, 82 F.3d 254, 258 (8th Cir. 1996). Additionally, an ALJ need not methodically discuss each *Polaski* factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately

6

explained and supported, credibility findings are for the ALJ to make. *See Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000); *see also Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004). For the following reasons, the Court finds that the reasons offered by the ALJ in support of her credibility determination are based on substantial evidence.

The ALJ found that although Plaintiff's medically-determinable impairments could be expected to cause the symptoms she claims, the statements she made concerning the intensity, persistence and limitations on function from these impairments were "not entirely credible" (Tr. 31). The ALJ questioned Plaintiff's credibility regarding the reasons she provided for leaving her previous job as a dishwasher (*Id.*). Contradictions between a claimant's sworn testimony and previous reports weigh against the claimant's credibility. *See Karlix v. Barnhart*, 457 F.3d 742, 748 (8th Cir. 2006). Plaintiff testified that she had to leave work five times within a month because of her headaches, and was let go after a month of employment without reason (Tr. 50-51). On Plaintiff's disability report, however, when asked why she stopped working, she wrote: "I was fired because . . . my boyfriend . . . was standing up for me . . . I felt that they are [sic] sexist and they did not want to make accommodations for me recommended by the doctor" (Tr. 195). The ALJ stated, citing the disability report, that Plaintiff said she "was fired and discriminated against because she stood up for her boyfriend" (Tr. 31). Though the ALJ's summary may be inconsistent with the disability report itself, the fact remains that Plaintiff has given inconsistent reasons as to why she no longer works as a dishwasher.

The ALJ also questioned Plaintiff's credibility regarding the severity of her symptoms based on Plaintiff's failure to follow treatment advice (Tr. 31). *See Guilliams v. Barnhart*, 393 F.3d 789, 804 (8th Cir. 2005) (failure to follow a recommended course of treatment weighs against a claimant's credibility). Plaintiff regularly visited Aninda Acharya, M.D. ("Dr.

7

Acharya"), but did not seek treatment from a primary care physician or schedule a dilated eye exam per the recommendations of Dr. Acharya (Tr. 400, 435, 441, 445). Though Diamox was found to resolve Plaintiff's papilledema, Plaintiff stopped taking the medication because she felt that she did not need it anymore (Tr. 256, 328). *Goff*, 421 F.3d at 793 (failure to take medication is "relevant to the credibility determination"); *Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994) ("not using prescription medications" is relevant to the credibility determination).

The ALJ considered Plaintiff's daily activities, noting that she takes care of her personal needs, the needs of her three-year-old son, has a boyfriend, and goes shopping on a weekly basis (Tr. 31, 211-14). The ALJ highlighted that Plaintiff consistently reported low-grade headaches to Dr. Acharya (Tr. 30-31). Plaintiff's reports of low-grade pain, along with her successful completion of daily activities, led the ALJ to conclude that these factors "reflect[] negatively on [Plaintiff's] allegations of severe disability" (Tr. 31). The ALJ considered Plaintiff's headaches and obesity as functional restrictions, but noted that Dr. Acharya never reported a significant impairment and that Plaintiff admitted improvement with treatment and no side effects from her medication (Tr. 32, 358, 441). Finally, the ALJ considered the absence of objective medical evidence, noting that a Magnetic Imaging Resonance ("MRI") test of Plaintiff's brain showed no abnormalities and that a Computed Tomography ("CT") scan of Plaintiff's head showed no abnormalities (Tr. 29, 254, 263-86).

The Court finds that the ALJ's finding that Plaintiff was not fully credible in her reports was supported by substantial evidence. Plaintiff's inconsistent reasons for stopping work as a dishwasher, failure to follow treatment advice, successful completion of daily activities, improvement with medication, self-reported low-grade pain, and the absence of objective

medical evidence are "good reasons" why a reasonable ALJ would doubt the total disability which Plaintiff claims, and the ALJ's decision on credibility is therefore entitled to deference.

### B. RFC Determination

Plaintiff argues that the ALJ failed to properly consider the opinion of Dr. Acharya in reaching her RFC determination (Doc. 11 at 5). The Parties do not dispute that Dr. Acharya is Plaintiff's treating physician (*Id.* at 6; Doc. 16 at 10). In a headache impairment questionnaire, Dr. Acharya stated that Plaintiff's headaches and pseudotumor cerebri would frequently interfere with Plaintiff's attention and concentration, and that Plaintiff was capable of functioning in a low stress environment (Tr. 390-91). Further, Dr. Acharya stated that Plaintiff would be precluded from performing basic work activities and that she would likely be absent from work more than three times per month as a result of her impairment (Tr. 391). Dr. Acharya indicated that Plaintiff's headaches occur on her left side, and listed alcohol as a trigger for her headaches (Tr. 388). Dr. Acharya also noted that Plaintiff was fired as a dishwasher because of stress (*Id.*).

"[T]he ALJ must assess the claimant's [RFC], which is the most a claimant can do despite his limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). "RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." Social Security Ruling 96–8p, 1996 WL 374184 at *2. "[A] claimant's RFC [is] based on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *Moore*, 572 F.3d at 523 (quotation and citation omitted). "Accordingly, it is the

responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016).

"A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." *Reece v. Colvin*, 834 F.3d 904, 908-09 (8th Cir. 2016) (internal quotations omitted). "Although a treating physician's opinion is usually entitled to great weight, it 'do[es] not automatically control, since the record must be evaluated as a whole.'" *Id.* at 909 (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "A treating physician's own inconsistency may undermine his opinion and diminish or eliminate the weight given his opinions." *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015) (internal quotation marks omitted). The ALJ may give a treating physician's opinion less deference when it is based on claimant's subjective complaints rather than objective medical evidence. *See Cline v. Colvin*, 771 F.3d 1098, 1104 (8th Cir. 2014). Whether the ALJ gives the opinion of a treating physician great or little weight, the ALJ must "give good reasons" for doing so. *Prosch*, 201 F.3d at 1013 (citing 20 C.F.R. § 404.1527(d)(2)).

The Court finds that the ALJ gave proper weight to the opinion of Dr. Acharya when determining Plaintiff's RFC. The ALJ afforded Dr. Acharya's opinion "no weight," finding Dr. Acharya's opinion "not consistent with the record as a whole . . . [and] his own longitudinal treatment records" (Tr. 32). Indeed, there are inconsistencies between the record as a whole and Dr. Acharya's responses to the headache questionnaire. Dr. Acharya indicated that Plaintiff's headaches occurred on her left side; the record repeatedly states that Plaintiff's headaches are holocranial, defined by Plaintiff as "involving the whole head" (Tr. 388; Doc. 11 at 1; *see, e.g.,*

10

Tr. 322, 329, 340). Dr. Acharya listed alcohol as a trigger for Plaintiff's headaches, but Plaintiff has repeatedly denied ever consuming alcohol (Tr. 388; *see, e.g.,* Tr. 320, 339, 359). Dr. Acharya noted that Plaintiff was fired as a dishwasher because of stress, but Plaintiff stated she was fired because her previous employer was "sexist" and did not want to make accommodations for her (Tr. 391, 195). Finally, Dr. Acharya stated that Plaintiff would likely be absent from work more than three times per month as a result of her impairments and related treatment, but Dr. Acharya's records indicate that Plaintiff responds well to treatment, tolerates her medications, shows little if any signs of papilledema after taking medication, and that her pseudotumor cerebri is in remission (Tr. 329).

Because the responses of Dr. Acharya on the headache questionnaire are inconsistent with Dr. Acharya's medical records, it was within the ALJ's purview to assign the headache questionnaire "no weight." *See Milam*, 794 F.3d at 983. The ALJ evaluated the record as a whole, and the inconsistencies she highlighted are "good reasons" for her assignment (Tr. 32). 20 C.F.R. § 404.1527(d)(2); *see Prosch*, 201 F.3d at 1013. Therefore, the Court finds that the ALJ gave proper weight to the opinion of Dr. Acharya.

Moreover, the ALJ considered the opinion of Lenora Brown, Ph.D. ("Dr. Brown"), who completed a psychological evaluation of Plaintiff (Tr. 32-33). Dr. Brown opined that Plaintiff had moderate limitations in activities of daily living and social functioning, and that Plaintiff was within the normal limits in concentration, persistence, and pace (Tr. 385). The ALJ noted that Plaintiff's medical records since Dr. Brown's evaluation indicate difficulties in concentration, persistence, and pace; thus, the ALJ gave this portion of Dr. Brown's opinion "little weight" (Tr. 33).

The ALJ also considered the opinion by Kyle DeVore, Ph.D. ("Dr. DeVore"), a non-examining State agency consultant who completed a psychiatric review of Plaintiff (Tr. 32). Dr. DeVore found that Plaintiff had no restrictions in activities of daily living, and moderate difficulties in maintaining concentration, persistence, and pace (Tr. 66). The ALJ gave "some weight" to these findings (Tr. 32). Because Plaintiff cares for her three-year-old son and has a boyfriend, the ALJ gave "no weight" to Dr. DeVore's opinion that Plaintiff has mild limitations in social functioning (*Id.*).

Lastly, the ALJ considered the objective medical evidence (Tr. 28-33). John Selhorst, M.D. ("Dr. Selhorst"), examined Plaintiff for headaches (Tr. 250-63). Dr. Selhorst found that after Plaintiff took Diamox for papilledema, Plaintiff's vision problems had resolved (Tr. 254). Dr. Selhorst also found that an MRI of Plaintiff's brain was normal (Tr. 254). Moreover, a CT scan of Plaintiff's head revealed no abnormalities (Tr. 263-86). A slit-lamp examination and multiple dilated funduscopic exams[4] showed Plaintiff to be within normal limits (Tr. 254-55, 272). Likewise, Plaintiff tested within normal limits on a cerebellar exam and multiple neurological exams (Tr. 272-75).

The ALJ found Plaintiff has the RFC to perform a range of medium work with five separate limitations (Tr. 28). Medium work is defined as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967(c). In Dr. Acharya's examinations of Plaintiff, he recorded: 5/5 bilateral strength, intact sensations, 2/4 reflexes, and intact gait and coordination (Tr. 321, 329, 339, 367-68, 400, 435,

---

[4] Slit-lamp and funduscopic examinations are used to look at structures in the eye, including the cornea, iris, lens, sclera, retina, and optic nerve disk. *See Slit-lamp exam*, U.S. Nat'l Library of Med., https://medlineplus.gov/ency/article/003880.htm (updated February 23, 2015); Henry Schneiderman, *The Funduscopic Examination*, *in* 117 CLINIC METHODS: THE HISTORY, PHYSICAL, AND LABORATORY EXAMINATIONS (H. Kenneth Walker et al. eds., 3d ed. 1990), *available at* https://www.ncbi.nlm.nih.gov/books/NBK201/.

440). Limiting Plaintiff to unskilled work is consistent with Plaintiff's education, her testimony that she has a learning disorder, Dr. Brown's psychological evaluation, and the ALJ's finding that she has a moderate limitation in concentration, persistence, and pace (Tr. 28). The limitation of avoiding ropes, ladders, and scaffolds is consistent with Plaintiff's testimony that her impairments affect her ability to climb stairs (Tr. 216). Similarly, the limitation of avoiding hazardous heights is consistent with Plaintiff's testimony and the record as a whole (Tr. 28). The ALJ also stated that Plaintiff should not work in an environment with more than infrequent handling of customer complaints, and should not work in a setting that requires constant contact with the regular public (*Id.*). These limitations are supported by Plaintiff's testimony about her social anxiety, Dr. Brown's psychological evaluation, and Dr. DeVore's psychiatric review (Tr. 216-17, 385, 66). In determining Plaintiff's RFC, the ALJ considered "all relevant evidence, including the medical records, observations of treating physicians and others, and [Plaintiff's] own description of [her] limitations." *Moore*, 572 F.3d at 523. Therefore, the Court finds that the ALJ made a proper RFC determination.

**C. Vocational Expert Testimony**

Plaintiff argues that the ALJ relied on an incomplete hypothetical presented to the VE (Doc. 11 at 13). Specifically, Plaintiff argues that because the hypothetical did not include the ALJ's finding that Plaintiff has moderate difficulties in concentration, persistence, or pace, the Commissioner cannot meet her burden of proof that there are jobs in the national economy that Plaintiff can perform with the restrictions found (*Id.* at 13-14).

An ALJ posing a hypothetical to a VE is only required to include a claimant's credible limitations. *Renstrom v. Astrue*, 680 F.3d 1057, 1067 (8th Cir. 2012); *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) ("The ALJ's hypothetical question to the vocational expert needs

to include only those impairments that the ALJ finds are substantially supported by the record as a whole.") (quoting *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006)). When the hypothetical which the ALJ poses to a VE captures the concrete consequences of the claimant's deficiencies, an ALJ's reliance on the VE's testimony is proper. *Gieseke v. Colvin*, 770 F.3d 1186, 1189 (8th Cir. 2014).

In support of her argument that the ALJ must have included the moderate limitation in concentration, persistence, or pace in the hypothetical, Plaintiff relies on *Newton v. Chater*, 92 F.3d 688, 695 (8th Cir. 1996). In *Newton*, the circuit court remanded because the hypothetical presented to the VE did not include "[the claimant's] deficiencies of concentration, persistence, or pace." *Id.* There was no dispute in the medical evidence that the claimant suffered from these deficiencies; one doctor found the claimant had "moderate difficulties," and another doctor found the claimant was "markedly limited in his ability to carry out detailed instructions and moderately limited in his ability to main attention and concentration for extended periods." *Id.* Moreover, the VE stated on cross-examination that the claimant's "concentration and persistence problems related to basic work habits needed to maintain employment." *Id.*

Here, the medical records contain conflicting reports about Plaintiff's difficulties in concentration, persistence, and pace. Dr. Brown found Plaintiff's concentration, persistence, and pace to be within normal limits (Tr. 385). The ALJ, however, weighed other factors such as Dr. DeVore's opinion and Plaintiff's use of an alarm as a medication reminder (Tr. 26). The ALJ concluded that Plaintiff "has difficulties in concentration, persistence, and pace, but they do not appear to be more than moderate" (*Id.*). Unlike *Newton*, there is no medical evidence that Plaintiff is "markedly limited." Moreover, in Plaintiff's cross-examination of the VE, Plaintiff

14

did not ask how concentration, persistence, and pace would affect Plaintiff's ability to find and maintain employment (Tr. 60).

Because an ALJ posing a hypothetical to a VE is only required to include a claimant's credible limitations, the ALJ in this case did not need to include moderate limitations in concentration, persistence, and pace. *See Renstrom*, 680 F.3d at 1067. Thus, the VE was aware of all of Plaintiff's credible limitations and the Commissioner met her burden of proof that there are jobs in the national economy that Plaintiff can perform with the restrictions found. Therefore, the Court finds the ALJ properly relied on the hypothetical posed to the VE.

## V. CONCLUSION

For the reasons set forth above, the Court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED with prejudice**.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 25th day of September, 2017.

    /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE